**STEVEN J. ROTHANS – State Bar No. 106579**
**SCOTT J. CARPENTER – State Bar No. 253339**
**CARPENTER, ROTHANS & DUMONT LLP**
**500 S. Grand Avenue, 19th Floor**
**Los Angeles, CA 90071**
**(213) 228-0400 / (213) 228-0401 [Fax]**
**srothans@crdlaw.com / scarpenter@crdlaw.com**

Attorneys for Defendants, City of San Bernardino, a public entity (also erroneously sued as San Bernardino Police Department), and Sergeant Daniel Han

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL ZAMUDIO, JR.,<br><br>                    Plaintiff,<br><br>          v.<br><br>DANIEL HAN, CITY OF SAN BERNARDINO; SAN BERNARDINO POLICE DEPARTMENT; DENNIS HAN; and DOES 1 to 20, Inclusive,<br><br>                    Defendants. | Case No.:  5:24−cv−01747−MWF−SHK<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Statement of Uncontroverted Facts and Conclusions of Law and Index of Supporting Evidence]<br><br>Date:   October 27, 2025<br>Time:  10:00 a.m.<br>Courtroom:  5A |

PLEASE TAKE NOTICE that on October 27, 2025 at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 5A of the United States District Court, Central District, located at 350 West First Street, Los Angeles, California 90012, Defendants City of San Bernardino, a public entity, Sergeant Daniel Han, will and, pursuant to Federal Rule of Civil Procedure 56, hereby do move the Court for summary judgment, or in the alternative partial summary

judgment, as to the following claims and issues:

1.      Defendants are entitled to judgment in their favor as to the plaintiff's "Fourteenth Amendment" claim under 42 U.S.C. § 1983 fails where the uncontroverted evidence establishes that no constitutional violation occurred, nor is there evidence of discriminatory motive or that plaintiff was intentionally treated differently from similarly situated individuals without a rational relationship to a legitimate state purpose.

2.      Defendants are entitled to judgment in their favor as to the plaintiff's "Fourth Amendment" claim under 42 U.S.C. § 1983 fails where the uncontroverted evidence establishes that reasonable suspicion existed to detain plaintiff then probable cause existed to arrest plaintiff, any search conducted on plaintiff or plaintiff's vehicle was done so lawfully, and that any force used against plaintiff was objectively reasonable under the totality of the circumstances.

3.      Defendants are entitled to judgment in their favor as to the plaintiff's "Conspiracy" claim under 42 U.S.C. § 1983 fails where the uncontroverted evidence establishes that no constitutional violation occurred, nor is there evidence of an agreement to violate plaintiff's right, and also such a claim is barred by the intra-corporate conspiracy doctrine.

4.      As to each of plaintiff's claims under 42 U.S.C. § 1983, for summary judgment in favor of Sergeant Han, and against the plaintiff, where Sergeant Han is shielded from liability by the doctrine of qualified immunity.

5.      Defendants are entitled to judgment in their favor as to the plaintiff's "Municipal and Supervisory Liability" claim under 42 U.S.C. § 1983 fails where the uncontroverted evidence establishes that the City was not deliberately indifferent to the training needs of its officers and there is no evidence that the City of San Bernardino and/or the SBPD had an unconstitutional policy, custom or practice that was the moving force behind any violation of rights.

6.      As to plaintiff's request for punitive damages against Sergeant Han

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1  where the uncontroverted evidence does not support a finding that his conduct was

2  malicious, oppressive or in reckless disregard of the plaintiff's rights.

3      This motion is made after meet and confer efforts pursuant to Local Rule 7-3

4  that occurred on September 19, 2025.  <u>See</u> Declaration of Scott J. Carpenter.

5      This motion is based upon this Notice of Motion and Motion, the

6  accompanying Memorandum of Points and Authorities, the declarations of

7  Sergeant Han, Officer Anderson, and Lieutenant Cintron, and the evidence

8  submitted with the Index of Supporting Evidence, any matters of which the Court

9  may take judicial notice, all pleadings and papers on file in this action, and upon

10  such other matters as may be presented to the Court.

11  DATED:  September 29, 2025         CARPENTER, ROTHANS & DUMONT LLP

12                                    /s/  *Scott J. Carpenter*

13

14                          By:  _____
                                  Steven J. Rothans, Esq.
15                                Scott J. Carpenter, Esq.
                                  Attorneys for Defendants
16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1

2

# <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................1

II.  STATEMENT OF FACTS ..................................................................................2

III.  STATEMENT OF LAW.....................................................................................4

    A. Plaintiff's Fourth Amendment Claim Is Subject To Summary
Judgment. ..........................................................................................................4

        1.  Reasonable Suspicion Existed To Stop Plaintiff. ...........................4

        2.  Probable Cause Existed To Arrest Plaintiff......................................7

        3.  The Minimal Force Used Was Objectively Reasonable Under The
Circumstances. ................................................................................11

        4.  No Unreasonable Searches. ............................................................14

        5.  The Traffic Stop Was Not Unlawfully Prolonged.........................15

    B. Plaintiff's Fourteenth Amendment Claim Fails. ............................15

    C. Plaintiff's Conspiracy Claim Fails....................................................16

    D. Sergeant Han Is Entitled To Qualified Immunity. ...........................18

    E. There Is No Evidence To Support Plaintiff's *Monell* Claim. ..........19

    F. The Prayer For Punitive Damages Should Be Stricken. .................21

IV.  CONCLUSION..................................................................................................21

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Cases**

Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912 (9th Cir. 2001)..........13

Ashcroft v. al-Kidd, 563 U.S. 731 (2011) ...............................................................18

Atwater v. City of Lago Vista, 532 U.S. 318 (2001) ................................................8

Avalos v. Baca, 596 F.3d 583 (9th Cir. 2010)..........................................................16

Barbere v. Cnty. of Santa Barbara, 2019 WL 988677 (C.D. Cal. Jan. 18, 2019)...13

Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998) ..............................................12

Birrell v. Knauf, 2013 WL 4855195 (E.D. Cal. Sept. 11, 2013)..............................17

Brosseau v. Haugen, 543 U.S. 194 (2004) ...............................................................18

Bryan County v. Brown, 520 U.S. 397 (1997)..........................................................20

Christie v. Iopa, 176 F.3d 1231 (9th Cir. 1999) .......................................................20

City of Canton v. Harris, 489 U.S. 378 (1989) ........................................................20

Connick v. Thompson, 563 U.S. 51 (2011)................................................................20

Cunningham v. Gates, 229 F.3d 1271 (9th Cir. 2000) ..............................................12

Demarest v. City of Vallejo, California, 44 F.4th 1209 (9th Cir. 2022) ...................9

DeShazier v. Williams, 2008 WL 4539485 (E.D. Cal. Oct. 10, 2008)...................16

Devenpeck v. Alford, 543 U.S. 146 (2004)................................................................8

Espinosa v. City and County of San Francisco, 598 F.3d 528 (9th Cir. 2010).......11

Freeman v. City of Santa Ana, 68 F.3d 1180 (9th Cir. 1995) .................................16

Graham v. Connor, 490 U.S. 386 (1989) .................................................................11

Harlow v. Fitzgerald, 457 U.S. 800 (1981) .............................................................18

Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013)..15

Heck v. Humphrey, 512 U.S. 477 (1994)..................................................................6

Hill St. Health Servs. LLC v. Cnty. of Los Angeles,
  2016 WL 9453998 (C.D. Cal. Nov. 16, 2016).....................................................16

In re Arturo D., 27 Cal.4th 60 (2002).......................................................................14

Kuhlken v. Cnty. of San Diego, 764 F. App'x 612 (9th Cir. 2019).........................10

- v -

Lal v. California, 746 F.3d 1112 (9th Cir. 2014) ...................................................18

Lara v. City of Maywood, 2008 WL 11636967 (C.D. Cal. Sept. 22, 2008)...........21

Lobato v. Las Vegas Metro. Police Dep't,
    2023 WL 6620306 (9th Cir. Oct. 11, 2023).......................................................17

Los Angeles v. Heller, 475 U.S. 796 (1986) .......................................................19

Mattos v. Agarano, 661 F.3d 433(9th Cir. 2011) ..............................................18

Miller v. Clark County, 340 F.3d 959 (9th Cir. 2003) .......................................11

Oviatt v. Pearce, 954 F.2d 1470 (9th Cir. 1992) ..............................................19

People v. Quiroga, 16 Cal.App.4th 961 (1993).....................................................9

People v. Sherman, 2024 WL 4878130 (Cal. Ct. App. Nov. 25, 2024)...................5

People v. Webster, 54 Cal. 3d 411 (1991)..........................................................14

People v. White, 93 Cal.App.4th 1022 (2001)……………......…………....14, 18

Quezada v. Hubbard, 2002 WL 1598873 (N.D. Cal. July 18, 2002).....................15

Reyes v. City of Santa Ana, 832 F. App'x 487 (9th Cir. 2020) .............................13

Rodriguez v. Cnty. of Los Angeles, 891 F.3d 776 (9th Cir. 2018)........................21

Romero v. Kitsap County, 931 F.2d 624 (9th Cir. 1991).......................................18

Rosenbaum v. Washoe Cnty., 663 F.3d 1071 (9th Cir. 2011) ...............................19

Scott v. Harris, 550 U.S. 372 (2007) ....................................................................6

Shafer v. Cnty. of Santa Barbara, 868 F.3d 1110 (9th Cir. 2017)..........................18

Shaw v. City of Redondo Beach, 2005 WL 6117549 (C.D. Cal. Aug. 23, 2005) ..14

Smith v. City of Hemet, 394 F.3d 68 (9th Cir. 2005) ............................................11

Tarabochia v. Adkins, 766 F.3d 1115 (9th Cir. 2014) ..........................................18

Tatum v. City & Cnty of San Francisco, 441 F.3d 1090 (9th Cir. 2006)...........8, 13

Terry v. Ohio, 392 U.S. 1 (1968)..........................................................................11

Thompson v. City of Los Angeles, 885 F.2d 1439 (9th Cir.1989) .........................20

United States v. Arvizu, 534 U.S. 266 (2002).........................................................5

United States v. Goss, 256 F. App'x 122 (9th Cir. 2007) .......................................5

United States v. Gray, 2024 WL 1696361 (9th Cir. Apr. 18, 2024) ........................4

United States v. Lopez-Soto, 205 F.3d 1101 (9th Cir. 2000)...................................4

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

United States v. Robinson, 414 U.S. 218 (1973) ....................................................14

United States v. Sokolow, 490 U.S. 1 (1989)...........................................................5

United States v. Steinman, 130 F.4th 693 (9th Cir. 2025) .......................................15

United States v. Taylor, 60 F.4th 1233 (9th Cir. 2023)........................................1, 15

United States v. Vasquez, 2023 WL 2985129 (9th Cir. Apr. 18, 2023) ..................5

United States v. Wallace, 213 F.3d 1216 (9th Cir. 2000) ........................................7

Weldon v. Conlee, 2015 WL 1811882 (E.D. Cal. Apr. 21, 2015).........................12

White v. Seabrooks, 2022 WL 17729964 (C.D. Cal. Nov. 29, 2022)......................7

Whren v. United States, 517 U.S. 806 (1996)..........................................................7

Williamson v. City of Nat'l City, 23 F.4th 1146 (9th Cir. 2022)....................12, 13

Ziglar v. Abbasi, 582 U.S. 120 (2017) ...................................................................17

Zoellner v. City of Arcata, 588 F. Supp. 3d 979 (N.D. Cal. 2022) .........................19

**Statutes**

Penal Code § 148 ..................................................................................................2, 8

Vehicle Code § 4462 ............................................................................................8, 9

Vehicle Code section 5201 ...................................................................................1, 8

Vehicle Code § 12951 ......................................................................................2, 8, 9

Vehicle Code § 40000.11 ........................................................................................8

**Other Authorities**

9th Cir. Model Jury Instr. 5.5 ................................................................................21

9th Cir. Model Jury Instr. 9.4 ................................................................................19

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    INTRODUCTION**

3        On December 13, 2023, San Bernardino Police Department ("SBPD")

4  Sergeant Daniel Han conducted a traffic stop of plaintiff, Manuel Zamudio, Jr., for

5  violation of Vehicle Code section 5201 – license plate obscurement.  At the outset

6  of the traffic stop, plaintiff was uncooperative, noncompliant and resistant,

7  including refusing repeated demands to see his license and registration.  Due to

8  plaintiff's resistance, he was placed under arrest and handcuffed but ultimately

9  released with a traffic citation.

10        Plaintiff claims that the traffic stop was an illegal scheme concocted by

11  Sergeant Han and his brother, Dennis Han ("Dennis"), to harass plaintiff because

12  of an ongoing dispute between plaintiff and Dennis.  Plaintiff brings claims under

13  42 U.S.C. § 1983 for violation of the Fourth Amendment (unlawful seizure /

14  search / excessive force), violation of Fourteenth Amendment Equal Protection,

15  conspiracy, and municipal liability.  The remaining defendants in the case are

16  Sergeant Han and the City of San Bernardino; Dennis was initially named as a

17  defendant but has since been dismissed.  Each of plaintiff's claims is subject to

18  summary judgment where the indisputable evidence shows that Sergeant Han had

19  a lawful basis to conduct the traffic stop.

20        First, plaintiff's claims for false detention and arrest should be summarily

21  adjudicated where the undisputed material facts establish that Sergeant had

22  reasonable suspicion to detain plaintiff due to the violation of the Vehicle Code

23  section 5201.  Regardless of plaintiff's claims about a conspiracy between the Han

24  brothers, Sergeant Han's "subjective motivations, whatever they may have been,

25  could not change the objective reasonableness of [his] actions."  United States v.

26  Taylor, 60 F.4th 1233, 1240 (9th Cir. 2023).

27        Second, there was probable cause to arrest plaintiff, not only for the Section

28  5201 violation, but also for refusing to provide his driver's license and registration

- 1 -

1   (violations of Vehicle Code section 12951 and 4462) and for resisting, delaying,

2   and/or obstructing a peace officer (a violation of Penal Code section 148).

3       Third, plaintiff's excessive force claim is subject to summary judgment

4   where the undisputed material facts demonstrate that the minimal amount of force

5   used by Sergeant Han and any other SBPD officer against the plaintiff was

6   objectively reasonable under the totality of circumstances.

7       Fourth, plaintiff's Equal Protection claim fails where a rational basis existed

8   to conduct the traffic stop and there is no evidence that plaintiff was intentionally

9   treated differently from similarly situated individuals.

10       Fifth, plaintiff's conspiracy claim fails where there is no underlying

11   constitutional violation, and plaintiff can only offer conclusory allegations of a

12   conspiratorial agreement.

13       Sixth, plaintiff's <u>Monell</u> claim should also be dismissed where there is no

14   evidence that the City of San Bernardino implemented an unconstitutional policy,

15   custom or practice of stopping motorists without cause.

16       Lastly, Sergeant Han is shielded from liability by qualified immunity.

17   **II.**  **STATEMENT OF FACTS**

18       During the afternoon of December 13, 2023, SBPD Sergeant Daniel Han

19   was on duty patrolling in a marked police vehicle in the City of San Bernardino.

20   Fact 1.

21       At approximately 2:53 p.m., he received a call from his brother, Dennis,

22   who stated that he was going to call the police because of issues he was having

23   with his neighbor and that Sergeant Han should not worry if he heard about it over

24   the radio.  Fact 2.  While Sergeant Han had known about prior issues between

25   Dennis and his neighbors, unbeknownst to Sergeant Han, Dennis had also been

26   having disputes with his neighbor's construction workers, including plaintiff.

27   Facts 4-6.  And while Dennis was calling the police to report plaintiff, Dennis did

28   not mention plaintiff or any issues with plaintiff to Sergeant Han.  Facts 8-12.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1    Because Sergeant Han was in the area, he drove to his brother's house on

2  East Mirada Road to use the restroom.  Fact 13.  At some point after 3:00 p.m.,

3  Sergeant Han turned onto East Mirada Road and observed a pickup truck

4  accelerate from a parked position at a high rate of speed and run a stop sign.  Facts

5  14-15.  His suspicions aroused, Sergeant Han pursued the pickup truck and

6  attempted to run its license plate.  Facts 16-18.  However, because a ball tow hitch

7  was installed on the pickup's rear bumper in front of the license plate, Sergeant

8  Han could not identify all of the digits and could not radio in a complete license

9  plate number.  Fact 19.  At around 3:15 p.m., Sergeant Han determined to stop the

10  pickup for violation of Vehicle Code section 5201 and issue a warning to the

11  driver.  Facts 20-22.

12    After initiating the stop, Sergeant Han approached the driver's side of the

13  pickup and greeted the driver (later identified as plaintiff, Manuel Zamudio, Jr.).

14  Facts 23-26.  Plaintiff was immediately hostile and uncooperative with Sergeant

15  Han.  Facts 28-30.  Despite multiple requests to see his license and registration,

16  plaintiff repeatedly refused to provide Sergeant Han with those documents.  Facts

17  28-37.  Plaintiff also refused multiple commands to exit the pickup truck, all

18  while yelling at Sergeant Han and hurling accusations that Sergeant Han was

19  acting on behalf of Dennis.  Facts 31-42.  Sergeant Han tried to show plaintiff the

20  license plate obscurement and explain the basis for the stop.  Facts 41, 43.  He

21  gave plaintiff multiple opportunities to provide his license and registration, but

22  plaintiff still refused, telling Sergeant Han that he had the documents but was not

23  going to provide them.  Facts 44-46.

24    Because of his unyielding refusal to provide his license and registration, as

25  well as his obstructing the traffic stop mission, Sergeant Han had probable cause

26  to arrest plaintiff for violations of Vehicle Code section 12951 and Penal Code

27  section 148, among others.  Fact 47.  Sergeant Han made attempts to take plaintiff

28  into custody, but plaintiff physically resisted, including swinging his arm away

- 3 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

from Sergeant Han's grasp and resisting handcuffing efforts.  Facts 48-59.  A
second SBPD officer, Officer Parker Anderson, arrived on scene and had to assist
Sergeant Han in getting plaintiff into handcuffs.  Facts 60-64.

Once in handcuffs, plaintiff ultimately became more compliant, and
Sergeant Han was able to continue his traffic stop investigation.  Facts 65-68.
After running plaintiff's information and gaining plaintiff's cooperation, Sergeant
Han had the handcuffs removed and he determined to just issue a citation to
plaintiff for the Section 5201 violation rather than book him.  Facts 70, 73.
Plaintiff was cited and released.  Fact 75.

Because he was dumbfounded about plaintiff's hostility and the accusations
that Dennis had orchestrated the encounter, at around 4:03 p.m., Sergeant Han
called Dennis after the stop to ask what was going on and Dennis explained to
Sergeant Han for the first time about the issues he had been having with plaintiff.
Fact 77.  Meanwhile, after his release, plaintiff went back the Dennis's property to
confront and threaten Dennis.  Fact 79.

Some weeks later, to address the citation, plaintiff corrected the license
plate obscurement by reinstalling the ball tow hitch so that it did not block the
license plate, and then he filed a proof of correction with the San Bernardino
County Superior Court.  Facts 86-88.

## III.  <u>STATEMENT OF LAW</u>

### A.  **Plaintiff's Fourth Amendment Claim Is Subject To Summary Judgment.**

#### 1.  **Reasonable Suspicion Existed To Stop Plaintiff.**

A police officer may stop and detain a motorist on reasonable suspicion that
the driver has violated the law.  <u>See United States v. Lopez-Soto</u>, 205 F.3d 1101,
1104-05 (9th Cir. 2000) (requiring reasonable suspicion for investigative traffic
stops).  Reasonable suspicion is a "relatively low bar."  <u>United States v. Gray</u>,
2024 WL 1696361, at *2 (9th Cir. Apr. 18, 2024); <u>United States v. Vasquez</u>, 2023

- 4 -

WL 2985129, at *1 (9th Cir. Apr. 18, 2023).  In determining whether reasonable
suspicion exists, courts look to the totality of the circumstances to determine
whether there is a particularized and objective basis for the suspected wrongdoing.
United States v. Arvizu, 534 U.S. 266, 273 (2002). "'Reasonable suspicion'
requires a minimal level of objective justification, more than an inchoate or
unparticularized suspicion or 'hunch,' but less than probable cause." United States
v. Goss, 256 F. App'x 122, 123 (9th Cir. 2007) (citing United States v. Sokolow,
490 U.S. 1, 7 (1989)).

Sergeant Han had reasonable suspicion to stop plaintiff's pickup truck based
on the violation of Vehicle Code section 5201.  Section 5201 states, in relevant
part: "License plates . . . shall be mounted in a position so as to be *clearly visible*,
and so that the characters are upright and display from left to right, and shall be
maintained in a condition so as to be clearly legible." VEH. CODE § 5201(a)
(emphasis added).  Sergeant Han attempted to run plaintiff's license plate but
could not because a ball tow hitch mounted on plaintiff's rear bumper obscured
part of the license plate.

People v. White, 93 Cal.App.4th 1022 (2001) a case that is directly on point,
establishes that a partial obscurement is a violation of Section 5201.  The issue on
appeal was whether a license plate that was partially obscured by a trailer hitch ball
violated Section 5201 and thus provided a constitutional basis for the officer to
stop the vehicle. Id. at 1023-24.  The California Court of Appeals found that,
because the statute required license plates to be "clearly visible," the legislature
intended that the view of the license plate be entirely unobstructed. Id. at 1025.
Since the trailer hitch ball partially obstructed the license plate, the court held that
the driver had violated Section 5201, and the officer had lawful grounds for
stopping the vehicle. Id. at 1026; accord People v. Sherman, 2024 WL 4878130, at
*2–3 (Cal. Ct. App. Nov. 25, 2024) ("Under Vehicle Code section 5201,
subdivision (a), the position and condition of the license plate must be 'clearly

- 5 -

1  visible' with all of the characters 'clearly legible.'").

2      Similarly, here, Sergeant Han's view of plaintiff's license plate was partially

3  obstructed by the ball tow hitch mounted on plaintiff's rear bumper in front of the

4  rear license plate.  The indisputable evidence corroborates the violation, depicting

5  that the ball tow hitch partially obscured the license plate.  Facts 19-23.   The

6  BWC video evidence shows that the ball tow hitch, at a minimum, partially

7  obstructed the view of the license plate so that all of the license plate characters

8  were not "clearly visible."  Fact 19.  Radio dispatch recording, and the SBPD CAD

9  sheet regarding the stop, show that Sergeant Han radioed to dispatch the license

10  plate and noted that a digit had been obscured.  It can also be seen from the BWC

11  that Sergeant Han repeatedly explained the obscurement to plaintiff during the

12  stop, including telling plaintiff which digit of the license plate had been obscured

13  by the ball tow hitch.  Facts 32, 41, 43. After Officer Anderson arrived on scene,

14  he confirmed that the ball tow hitch obscured the license plate.  Fact 74.

15      To the extent plaintiff attempts to dispute that an obscurement existed, such

16  a subjective, uncorroborated, and self-serving contention is not enough to

17  overcome summary judgment.  See Scott v. Harris, 550 U.S. 372, 380 (2007)

18  ("When opposing parties tell two different stories, one of which is blatantly

19  contradicted by the record, so that no reasonable jury could believe it . . .").  No

20  reasonable juror, viewing the BWC and photographs therefrom (Fact 19), could

21  find that the rear license plate was "entirely unobstructed."  At the very least, the

22  objective evidence clears the "low bar" needed to establish reasonable suspicion.

23      Moreover, by fixing the obscurement and filing a proof of correction,

24  plaintiff acknowledged that the license plate had actually been obscured, and thus

25  he has waived any basis to challenge the stop.  Cf. Heck v. Humphrey, 512 U.S.

26  477 (1994).  Rather than contest the citation, plaintiff fixed the obscurement.  Fact

27  86-88.  He reinstalled the ball tow hitch so that it would protrude down from the

28  rear bumper and not up in front of the license plate.  Id.  Plaintiff then took his

- 6 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

pickup truck to a Sheriff's station to verify the correction, after which time he filed
a proof of correction with the court to have the underlying infraction proceeding
dismissed. Id. Correcting the obscurement is, at least, a tacit admission that a
violation occurred and that there was an objective, lawful basis for the stop.

Plaintiff may argue that Sergeant Han used the license plate obscurement as
a pretext to stop plaintiff, when the real purpose was to harass plaintiff on behalf of
Dennis. However, "[t]he standard for determining whether probable cause or
reasonable suspicion exists is an objective one; it does not turn either on the
subjective thought processes of the officer or on whether the officer is truthful
about the reason for the stop." White v. Seabrooks, 2022 WL 17729964, at *5
(C.D. Cal. Nov. 29, 2022) (Fitzgerald, J.). The Supreme Court has "flatly
dismissed the idea that an ulterior motive might serve to strip the agents of their
legal justification. Subjective intentions play no role in ordinary, probable-cause
Fourth Amendment analysis." Whren v. United States, 517 U.S. 806, 812-13
(1996); accord United States v. Wallace, 213 F.3d 1216, 1219 (9th Cir. 2000)
("[t]he fact that the alleged traffic violation is a pretext for the stop is irrelevant, so
long as the objective circumstances justify the stop."). Because there is no genuine
dispute as to whether reasonable suspicion existed to stop plaintiff for violating
Section 5201, Sergeant Han's supposed ulterior motives cannot invalidate the stop.

In addition to the Section 5201 violation, another justification for the stop
was plaintiff's violation of Vehicle Code section 22450 (requiring drivers to come
to a complete stop at a stop sign). When Sergeant Han first saw plaintiff's pickup
on East Mirada Road, Sergeant Han observed plaintiff accelerate erratically away
from Dennis's property and fail to stop at a stop sign at the intersection of East
Mirada Road and Harrison Street. Facts 13-15. Even putting aside the license
plate obscurement, the stop was legal based on plaintiff running the stop sign.

## 2.    Probable Cause Existed To Arrest Plaintiff.

An arrest is lawful so long as there exists probable cause to arrest the

- 7 -

suspect for any offense on the basis of facts known to the arresting officers. Devenpeck v. Alford, 543 U.S. 146, 152 (2004). "[A] police officer who observes criminal conduct may arrest the offender without a warrant, even if the pertinent offense carries only a minor penalty." Tatum v. City & Cnty of San Francisco, 441 F.3d 1090, 1094 (9th Cir. 2006). Again, as long as probable cause exists, an officer's subjective reasons for making the arrest are irrelevant. See id.; Devenpeck, 543 U.S. at 153. Here, there was probable cause to arrest plaintiff for violations of: (i) Vehicle Code section 5201, (ii) Vehicle Code sections 12951 and 4462, and (iii) Penal Code section 148.

First, as explained above, the indisputable facts demonstrate that plaintiff violated Vehicle Code section 5201. Under federal law, it is well settled that an officer who has probable cause to believe that an individual has committed a criminal offense may arrest the offender without violating the Fourth Amendment, *even if the offense carries only a minor penalty*, such as an infraction or is otherwise punishable by a fine only. See Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

Second, no reasonable juror would disagree as to whether plaintiff violated Vehicle Code sections 12951 and 4462. Those provisions require a driver to produce their driver's license and registration, respectively, upon an officer's demand. See VEH. CODE §§ 12951(b) and 4462(a).[1] California law also makes it a misdemeanor to violate Section 12951(b). See VEH. CODE § 40000.11(g).

Sergeant Han requested plaintiff's license and registration multiple times

---

[1] Plaintiff similarly violated Vehicle Code section 16028 which requires "every person who drives a motor vehicle upon a highway shall provide evidence of financial responsibility for the vehicle that is in effect at the time the demand is made." Vehicle Code § 16028(a).

- 8 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

and gave plaintiff multiple opportunities to comply.  Facts 28-46.  Since the traffic stop was valid, the demands for plaintiff's license and registration were likewise lawful.  Nevertheless, plaintiff deliberately, and repeatedly, refused such demands. Id.  When Sergeant Han mentioned that plaintiff was under arrest and gave plaintiff additional chances to turn the situation around, plaintiff continued to be willfully noncompliant.  Facts 38-46.  Plaintiff even told Sergeant Han on multiple occasions that he had his license and registration with him, but that he would not provide them to Sergeant Han, demonstrating that he had no intention of ever complying with Sergeant Han's requests.  Facts 45-46.

Based on plaintiff's noncompliance, there can be no dispute as to whether probable cause existed to arrest plaintiff for violating Vehicle Code sections 12951 and 4462.  See Demarest v. City of Vallejo, California, 44 F.4th 1209, 1224 (9th Cir. 2022) ("[O]nce [plaintiff] refused to produce his license for examination . . ., Officer Brown had probable cause to believe that [plaintiff] was committing an offense in violation of California Vehicle Code § 12951(b), and his continued detention and arrest were therefore reasonable under the Fourth Amendment.").

Third, probable cause arose to arrest plaintiff for violation of Penal Code section 148, resisting, delaying or obstructing a police officer in the performance of their duties.  Under Penal Code section 148, "[e]very person who willfully resists, delays, or obstructs any public officer [or] peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment" is punished as a misdemeanor offender.  PENAL CODE section 148(a)(1).  Section 148 "is not limited to nonverbal conduct involving flight or forcible interference with an officer's activities."  People v. Quiroga, 16 Cal.App.4th 961, 968 (1993).

Plaintiff obstructed and delayed the traffic stop mission in numerous ways. For starters, because plaintiff repeatedly refused to provide his license and registration, plaintiff prevented Sergeant Han from conducting any traffic stop investigation or issuing any citations.  Kuhlken v. Cnty. of San Diego, 764 F.

- 9 -

App'x 612, 613 (9th Cir. 2019) ("It is undisputed that Fox refused to provide identification upon request, creating the probable cause for a violation of California Penal Code § 148(a)(1) and California Vehicle Code § 12951(b).").

Furthermore, not only did plaintiff refuse to provide his license and registration, but also he refused to comply with several other lawful orders, including orders to step out of the vehicle (Facts 31, 33, 36) and to turn around when Sergeant Han attempted to take plaintiff into custody (Facts 48, 52, 55).  In total, plaintiff refused and/or disobeyed around twelve separate lawful orders – roughly 6 demands for license and registration, three commands to exit the pickup truck, and 3 commands for plaintiff to turn around and submit to handcuffing.  In addition to being noncompliant, plaintiff was uncooperative, hostile, and combative with Sergeant Han, continuously yelling and arguing with Sergeant Han, which further frustrated the traffic stop mission.

Plaintiff also physically resisted Sergeant Han during the traffic stop.  After giving plaintiff plenty of time and opportunities to comply with lawful commands, Sergeant Han attempted to place plaintiff in handcuffs.  Fact 47.  After ordering plaintiff to turn around, Sergeant Han tried to place his right hand on plaintiff's left arm, but plaintiff physically resisted and immediately swung his arm away from Sergeant Han's grasp.  Facts 48-49.  Plaintiff's resistance continued when he backed away from Sergeant Han while yelling at him and continuing to refuse to provide his license and registration.  Facts 50-55.  Even after Sergeant Han told plaintiff that he was resisting arrest, plaintiff continued to physically resist Sergeant Han's efforts at handcuffing, including by tensing his body, trying to turn his body around to face Sergeant Han, and by pulling his hands apart.  Facts 54-64.

Under these circumstances, any reasonable officer would have believed that there was probable cause to arrest plaintiff for resisting, obstructing, and delaying a peace officer in the lawful performance of his duties in violation of Penal Code section 148(a)(1). See, e.g., Smith v. City of Hemet, 394 F.3d 689, 697 (9th Cir.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

2005) (finding 148 violations for refusing to take hands out of pockets, repeatedly refusing to put his hands on his head, refusing to put his hands on his head and turn around).

### 3. The Minimal Force Used Was Objectively Reasonable Under The Circumstances.

Under the Fourth Amendment, officers may only use such force as is "objectively reasonable" under the circumstances. <u>Graham v. Connor</u>, 490 U.S. 386, 396-97 (1989). To determine whether the force used was reasonable, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." <u>Id.</u> at 396 (internal citations omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Id.</u> (citing <u>Terry</u>, 392 U.S. at 20-22).

The Ninth Circuit applies a three-step analysis to determine whether a police officer's use of force is objectively reasonable. First, a court must assess the severity of intrusion into an individual's Fourth Amendment rights by evaluating the "type and amount of force inflicted." <u>Miller v. Clark County</u>, 340 F.3d 959, 964 (9th Cir. 2003). Second, a court weighs the government's interests supporting the use of force by evaluating the severity of the crime, whether a suspect poses an immediate threat to the officers' or public's safety and, whether the suspect was resisting arrest or attempting to escape. <u>Graham</u>, 490 U.S. at 396. Finally, a court must "balance the force that was used by the officers against the need for such force to determine whether the force used was 'greater than is reasonable under the circumstances.'" <u>Espinosa v. City and County of San Francisco</u>, 598 F.3d 528, 537 (9th Cir. 2010).

Here, the only force used on plaintiff was the force necessary to get him in handcuffs. The evidence demonstrates that Sergeant Han did not use any pain

- 11 -

1  compliance holds on plaintiff, and he cannot be held liable for Officer Anderson's

2  use of force during the handcuffing.  See Barren v. Harrington, 152 F.3d 1193,

3  1194 (9th Cir. 1998) (requiring personal involvement in deprivation).[2]  In any

4  event, the officers used reasonable and minimal force under the circumstances.

5      First, courts have considered control holds or pain compliance techniques to

6  be low and minimal levels of force.  See Martinez v. City of Los Angeles, 2024

7  WL 4438889, at *12 (C.D. Cal. June 20, 2024) ("manipulation of Plaintiff's arm,

8  even if painful, under the circumstances constituted a relatively low level of

9  force") (citing Forrester v. City of San Diego, 25 F.3d 804, 807 (9th Cir. 1994);

10  Hammer v. Gross, 932 F.2d 842, 848 (9th Cir. 1991)); see also Williamson v. City

11  of Nat'l City, 23 F.4th 1146, 1154 (9th Cir. 2022) (pulling plaintiff by her arms

12  was minimal level of force).

13      Second, the officers' interest in securing plaintiff in handcuffs was high.  As

14  discussed above, probable cause existed to arrest plaintiff, and the use of handcuffs

15  incident to arrest is permitted.  Weldon v. Conlee, 2015 WL 1811882, at *13 (E.D.

16  Cal. Apr. 21, 2015) ("An officer may certainly use handcuffs to effectuate an

17  otherwise lawful arrest without implicating the Fourth Amendment.").  Plaintiff

18  was combative, uncooperative, and physically resisted Sergeant Han during the

19  encounter, creating significant officer safety issues.  Plaintiff repeatedly refused to

20  comply with Sergeant Han's commands, and he ultimately pulled away and

21  resisted efforts to have plaintiff turn around and submit to handcuffing.  Up until

22  he was handcuffed, plaintiff was hostile and often adopted threatening and

23  confrontational stances with his arm outstretched to his sides.  During the

24  handcuffing process, plaintiff continued to physically resist, to the point that

25

26  _____

27  [2] Even if plaintiff claimed that Sergeant Han failed to intervene as to force used by
   Officer Anderson, because Sergeant Han was handcuffing plaintiff and has to

28  overcome plaintiff's resistance, he had no "realistic opportunity" to intercede.
   Cunningham v. Gates, 229 F.3d 1271, 1290 (9th Cir. 2000).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Sergeant Han had to use two interlocked handcuffs to get plaintiff into custody.
Facts 56-64.

Third, on balance, "[t]he amount of force was itself relatively minor
compared to the ***considerable interest*** [Sergeant Han] had in maintaining control
of Plaintiff's movements while he handcuffed him and escorted him to the patrol
unit." See Barbere v. Cnty. of Santa Barbara, 2019 WL 988677, at *10 (C.D. Cal.
Jan. 18, 2019) (Fitzgerald, J.) (emphasis added) (citing Tatum v. City & Cty. of
San Francisco, 441 F.3d 1090, 1093 (9th Cir. 2006) (finding officer's use of arm
bar control hold objectively reasonable where suspect resisted being handcuffed);
Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 921 (9th Cir. 2001)
(finding use of physical force to handcuff plaintiff reasonable where plaintiff
stiffened her arm and attempted to pull free)).

Had plaintiff simply complied with Sergeant Han's lawful commands, as
well as not physically resisted, no force would have been needed. See Williamson,
23 F.4th at 1154 ("Williamson could have avoided or reduced the pain and injury
she alleges she suffered from the Officers' conduct by cooperating with them . . .
She did not. But her choice does not render the Officers' conduct unreasonable.").

To the extent plaintiff complains that the handcuffs were excessively tight,
such a claim fails. "Summary judgment on a tight handcuffing . . . excessive force
claim is merited if a plaintiff does not seek medical help or offer supporting
documentary evidence" of more than nominal injury. Reyes v. City of Santa Ana,
832 F. App'x 487, 491 (9th Cir. 2020). Here, plaintiff never asked the officers for
medical treatment, nor did he ever seek medical treatment related to his wrists.
And there is no evidence that plaintiff suffered any injury whatsoever as a result of
the handcuffs being tight. Facts 80, 83.

Moreover, courts will dismiss an excessive force claim related to
handcuffing at the summary judgment stage if an arrestee did not show obvious
signs that handcuffs were causing severe pain or agony. See, e.g., Shaw v. City of

- 13 -

1    <u>Redondo Beach</u>, 2005 WL 6117549, at *7 (C.D. Cal. Aug. 23, 2005) (No

2    excessive force where there was no "evidence that Shaw displayed any visible

3    signs of pain or extreme discomfort (e.g., crying, tearing, moaning)").  While

4    plaintiff may have mentioned the handcuffs being tight, he did not cry out in pain

5    or show other signs of acute distress (Fact 71), which indicated that his complaints

6    were unfounded, and the handcuffs were not excessively tight.  No injuries were

7    visible either.

8              **4.    No Unreasonable Searches.**

9         Plaintiff's Complaint mentions a claim for unlawful search but is silent as to

10    what was searched.  Compl. ¶ 41.  To the extent that plaintiff claims that Sergeant

11    Han unlawfully searched his person or vehicle, such claims are subject to summary

12    judgment.

13         Any search of plaintiff's person was lawful and incident to plaintiff's arrest.

14    <u>See</u> <u>United States v. Robinson</u>, 414 U.S. 218, 235 (1973) (lawful arrest

15    "establishes the authority to search" without a warrant, and such a search is

16    reasonable under the Fourth Amendment)

17         Any search of plaintiff's vehicle was also lawful under the circumstances.

18    The officers entered plaintiff's pickup only for purposes of locating driver's

19    license, registration and insurance, which were all necessary for completion of the

20    traffic stop mission.  Facts 66, 69. The California Supreme Court has held that a

21    limited warrantless search for automobile registration, driver's license, or

22    identification documentation does not violate the Fourth Amendment during a

23    valid traffic stop when the driver fails to produce the documents prior to a traffic

24    citation.  <u>See</u> <u>In re Arturo D.</u>, 27 Cal.4th 60, 86 (2002) (limited warrantless

25    searches for required registration and identification documentation are

26    permissible); <u>accord</u> <u>People v. Webster</u>, 54 Cal. 3d 411, 430–31 (1991) (California

27    law authorizes officer to enter a stopped vehicle and conduct an immediate

28    warrantless search for license and registration); <u>Quezada v. Hubbard</u>, 2002 WL

- 14 -

1  1598873, at \*3 (N.D. Cal. July 18, 2002) ("California law permits a limited search

2  for documentary material—a driver's license and registration").  There is no

3  evidence that the officers went beyond constitutional bounds in searching for the

4  required documents.  Alternatively, plaintiff's "failure to present a valid driver's

5  license justified the pre-impound inventory search" of his vehicle.  <u>United States v.</u>

6  <u>Vega</u>, 94 F. App'x 588, 593 (9th Cir. 2004).

7  **5.  The Traffic Stop Was Not Unlawfully Prolonged.**

8  Plaintiff alleges that he was subjected to an unlawfully "prolonged

9  detention."  Compl. ¶ 41.  A traffic stop may become unlawful if it is prolonged

10 beyond the time reasonably required to complete the mission of the stop and attend

11 to related safety concerns.  <u>Taylor</u>, 60 F.4th at 1239 (9th Cir. 2023). "Lawful

12 inquiries incident to a traffic stop can include checking a driver's license,

13 determining whether there are outstanding warrants, and inspecting the

14 automobile's registration and proof of insurance."  <u>United States v. Steinman</u>, 130

15 F.4th 693, 703 (9th Cir. 2025).

16 Here, since probable cause existed for plaintiff's arrest, a prolonged

17 detention claim is moot.  Regardless, any delays in completing the traffic stop were

18 caused by plaintiff's noncompliance and resistance.  And there is no evidence that

19 Sergeant Han engaged in any conduct that went beyond completing the traffic stop

20 mission and ultimately issuing the citation to plaintiff.

21 **B.  Plaintiff's Fourteenth Amendment Claim Fails.**

22 Plaintiff claims that the traffic stop violated his "right to the equal

23 protection" and subjected plaintiff to unlawful "differential treatment."  Compl. ¶

24 36.  "The Equal Protection Clause requires the State to treat all similarly situated

25 people equally."  <u>Hartmann v. Cal. Dep't of Corr. & Rehab.</u>, 707 F.3d 1114, 1123

26 (9th Cir. 2013).  Plaintiff can state a "class of one" Equal Protection claim by

27 alleging that he has "been intentionally treated differently from others similarly

28 situated and that there is no rational basis for the treatment."  <u>Village of</u>

- 15 -

1    Willowbrook v. Olech, 528 U.S. 562, 564 (2000).[3]

2          Plaintiff's Equal Protection claims fails because, for the reasons detailed

3    above, Sergeant Han was justified in stopping plaintiff's pickup truck and then

4    later arresting plaintiff during the stop.  As such, a "rational basis" existed for

5    Sergeant Han's conduct.  See DeShazier v. Williams, 2008 WL 4539485, at *10

6    (E.D. Cal. Oct. 10, 2008) ("If probable cause for the detention and arrest is found,

7    then by definition . . . there exists a rational basis for Plaintiff's treatment.").

8          In addition, there is no evidence upon which to conclude that plaintiff was

9    intentionally treated differently from similarly situated individuals.  Sergeant Han

10   testified that he frequently stopped motorists based on license plate obscurements

11   and that his typical practice was to issue a warning to the driver to fix the issue.

12   Fact 22.  Officer Anderson confirmed that he would have pulled plaintiff over for

13   the same reason, among other reasons.  Fact 74.  Plaintiff can offer no

14   nonconclusory facts to the contrary.  See Freeman v. City of Santa Ana, 68 F.3d

15   1180, 1188 (9th Cir. 1995) ("Selective enforcement of valid laws, without more,

16   does not make the defendants' action irrational."); Hill St. Health Servs. LLC v.

17   Cnty. of Los Angeles, 2016 WL 9453998, at *8 (C.D. Cal. Nov. 16, 2016)

18   (rejecting conclusory allegations of differential treatment).

19        **C.     Plaintiff's Conspiracy Claim Fails.**

20          In order to prevail on a conspiracy claim under § 1983, a plaintiff must show

21   "(1) the existence of an express or implied agreement among the defendant officers

22   to deprive [the plaintiff] of his constitutional rights, and (2) an actual deprivation

23   of those rights resulting from that agreement."  Avalos v. Baca, 596 F.3d 583, 592

24   (9th Cir. 2010).

25

26   _____

27   [3] Equal Protection also guards against discrimination based on a person's inclusion
     in a protected class (e.g., race).  Plaintiff does not allege such discrimination, and

28   the evidence shows that there was no racial animus or motive to discriminate
     against plaintiff based on race.  Fact 84.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1    Plaintiff's conspiracy claim alleges a "conspiracy at the scene" (Compl. at p.

2  10) and is thus limited to an alleged conspiracy between the officers at the scene of

3  the traffic stop.  Because Dennis was never at the scene of the stop, this claim, as

4  alleged, does not encompass any supposed conspiracy between Sergeant Han and

5  his brother Dennis.  In any event, plaintiff's conspiracy claim fails for several

6  reasons.

7    First, plaintiff cannot prove "an actual deprivation" of his constitutional

8  rights.  Without an underlying constitutional violation, the conspiracy claim fails.

9    Second, there is no evidence of a conspiracy between Sergeant Han and

10  Officer Anderson.  Sergeant Han and Officer Anderson never had any discussions

11  about plaintiff prior to the stop, and they never came to any agreements to act

12  against plaintiff when they were "on scene."  Facts 60-63.   And any such alleged

13  conspiracy between two SBPD officers would be barred by the intracorporate

14  conspiracy doctrine, which states that "an agreement between or among agents of

15  the same legal entity, when the agents act in their official capacities, is not an

16  unlawful conspiracy."  Ziglar v. Abbasi, 582 U.S. 120, 153 (2017); see Lobato v.

17  Las Vegas Metro. Police Dep't, 2023 WL 6620306, *2 (9th Cir. Oct. 11, 2023)

18  (applying the intracorporate conspiracy doctrine to a § 1983 conspiracy claim).

19    Third, even construing plaintiff's claim as involving an alleged conspiracy

20  between Sergeant Han and Dennis, there is insufficient evidence of an agreement

21  to violate plaintiff's rights.  Although the two brothers spoke prior to the stop,

22  there is no evidence they discussed plaintiff, let alone discussed harassing him or

23  detaining him.  Facts 2-11.  Plaintiff can offer no evidence as to what the brothers

24  discussed during that call (Fact 12).  All plaintiff has is pure conjecture, which

25  cannot overcome summary judgment.  See Birrell v. Knauf, 2013 WL 4855195, at

26  *8 (E.D. Cal. Sept. 11, 2013) (speculation not sufficient to avoid summary

27  judgment on conspiracy claim).

28  ///

- 17 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

**D.    Sergeant Han Is Entitled To Qualified Immunity.**

Under the doctrine of qualified immunity, government officials are shielded from liability for civil damages arising from mistakes unless their conduct violates "clearly established statutory or Constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1981); Romero v. Kitsap County, 931 F.2d 624 (9th Cir. 1991). Once the official pleads qualified immunity, the burden is on the plaintiff to prove two elements: (1) that a constitutional right was violated; and (2) that the right was clearly established at the time of the alleged misconduct. See Mattos v. Agarano, 661 F.3d 433, 440 (9th Cir. 2011).

Under the second prong of the qualified immunity analysis, "[a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted). Such clarity can only be established by "existing precedent" that has "placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). As such, "officials can have reasonable, but mistaken, beliefs . . . and in those situations courts will not hold that they have violated the Constitution." Katz, 533 U.S. at 205. "It is the plaintiff who bears the burden of showing that the rights allegedly violated were clearly established." Shafer v. Cnty. of Santa Barbara, 868 F.3d 1110, 1118 (9th Cir. 2017).

Here, Sergeant Han is entitled to qualified immunity as to all of plaintiff's claims. It cannot be disputed that reasonable suspicion existed to detain plaintiff. Facts 19-23. Sergeant Han also could have reasonably suspected, even if mistaken, that plaintiff's license plate was partially obscured. See White, 93 Cal.App.4th at 1025. And it was clearly established that his motivations were irrelevant and could not nullify the objective justification for the stop.

As to plaintiff's arrest, given his behavior, there is no basis to conclude that

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

"'all reasonable officers would agree' that probable cause was lacking." <u>Zoellner v. City of Arcata</u>, 588 F. Supp. 3d 979, 994 (N.D. Cal. 2022) (quoting <u>Rosenbaum v. Washoe Cnty.</u>, 663 F.3d 1071, 1076 (9th Cir. 2011)).

Sergeant Han also is entitled to qualified immunity as to his minimal use of force against plaintiff (i.e., handcuffing). At a minimum, reasonable officers could disagree about whether the circumstances warranted the force used to handcuff plaintiff. Any arm-control holds that were deployed were de minimis and necessary due to plaintiff's conduct. Given these circumstances, defendants could have believed reasonably, but mistakenly, that the force used did not amount to constitutionally prohibited excessive force. Defendants are therefore entitled to judgment as a matter of law.

Finally, there is no evidence that Sergeant Han's conduct, or the conduct of any SBPD officer, was motivated by malice or discriminatory intent. As such, the Sergeant Han is entitled to qualified immunity as there is no set of facts that would demonstrate that his actions on December 13, 2023 were anything but objectively reasonable under the totality of circumstances.

## E.    There Is No Evidence To Support Plaintiff's *Monell* Claim.

To succeed on a <u>Monell</u> claim, a plaintiff must first produce evidence to establish that: (1) City employee(s) acted under color of law; (2) which deprived plaintiff of his rights under the United States Constitution; and (3) which were done pursuant to an expressly adopted official policy or a longstanding practice or custom of the City. <u>See</u> 9th CIR. MODEL JURY INSTR. 9.5 (2019); <u>Oviatt v. Pearce</u>, 954 F.2d 1470, 1474 (9th Cir. 1992).

At the outset, plaintiff's <u>Monell</u> claim fails because he has not, and cannot, establish an underlying violation of his constitutional rights. <u>See</u> <u>Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) (no Monell liability absent showing of constitutional injury).

Even assuming an underlying violation, plaintiff cannot establish that a City

- 19 -

1  policy, custom or practice caused any constitutional injury.  Monell, 436 U.S. at
2  691.  It cannot be disputed that the City of San Bernardino and its Police
3  Department have, and did have, policies in place regarding unlawful searches and
4  seizures, as well as abundant and adequate training programs related thereto.  Facts
5  89-107.

6        There is no evidence that the City had a long-standing, widespread custom
7  or practice conducting unreasonable searches and seizures, detaining motorists
8  without reasonable suspicion, arresting individuals without probable cause, or
9  using excessive force.  Id.  In addition, there does not exist, nor did there exist at
10  the time of plaintiff's arrest, a custom, practice or policy of permitting officers to
11  use their police powers for personal purposes, target individuals for retaliation,
12  selectively enforce the law, or otherwise conspire to violate rights.  Id.

13        In the absence of a policy that is facially unconstitutional, plaintiff must
14  show a practice or custom was adopted in deliberate indifference to the rights
15  asserted herein and directly caused the violation of those rights.  Bryan County v.
16  Brown, 520 U.S. 397, 403–04 (1997).  Establishing liability based on a custom and
17  practice "may not be predicated on isolated or sporadic incidents . . ." Trevino, 99
18  F.3d at 918.  A "single constitutional violation ordinarily is insufficient to establish
19  a longstanding practice or custom." Christie v. Iopa, 176 F.3d 1231, 1235 (9th Cir.
20  1999).   There is no such evidence here.

21        Any claim against the City premised on an alleged failure to train officers
22  also fails.  In City of Canton v. Harris, 489 U.S. 378 (1989), the Supreme Court
23  held that "failure to train" liability exists only when the failure amounts to a
24  "deliberate indifference" to the plaintiff's (or decedent's) civil rights.  Id.
25  Deliberate indifference is a stringent standard requiring "proof that a municipal
26  actor disregarded a known or obvious consequence of his action." Connick, 563
27  U.S. at 61.  Here, there is no evidence that the City was on notice that a
28  "particular omission" in SBPD's training programs caused the violation of

- 20 -

1  plaintiff's constitutional rights.  Connick, 563 U.S. at 61.

2      There also is no evidence that the City acted with deliberately indifference

3  in failing "to investigate or discipline employees in the face of widespread

4  constitutional violations.'"  Rodriguez v. Cnty. of Los Angeles, 891 F.3d 776, 803

5  (9th Cir. 2018).  Plaintiff never complained to SBPD about the stop.  Fact 81.

6  Plaintiff similarly cannot show that the City's ratification of officer misconduct.

7  The Complaint lacks nonconclusory allegations that a final policymaker "knew of

8  the purported constitutional violations and approved or ratified them."  Lara v.

9  City of Maywood, 2008 WL 11636967, at *12 (C.D. Cal. Sept. 22, 2008).

10      **F.**    **The Prayer For Punitive Damages Should Be Stricken.**

11      Punitive damages are awarded only if "the defendant's conduct was

12  malicious, oppressive or in reckless disregard of the plaintiff's rights."  9th CIR.

13  MODEL JURY INSTR. 5.5 (2024).  The evidence here does not support a finding that

14  Sergeant Han acted with malice, oppression or in reckless disregard of plaintiff's

15  rights.

16  **IV.**    **CONCLUSION**

17      Based on the foregoing, defendants respectfully request that the Court grant

18  the instant motion in its entirety and enter judgment in their favor.

19  DATED:  September 29, 2025        CARPENTER, ROTHANS & DUMONT LLP

20

21                          /s/  *Scott J. Carpenter*

22                By:  _____

                              Steven J. Rothans, Esq.

23                                Scott J. Carpenter, Esq.

                              Attorneys for Defendants

24

25

26

27

28

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

## <u>CERTIFICATE OF COMPLIANCE</u>

Per Local Rule 11-6.2, the undersigned, counsel of record for defendants City of San Bernardino and Sergeant Han, certify that this brief contains 6,609 words, which complies with the word limit of Local Rule 11-6.1.

DATED:  September 29, 2025          CARPENTER, ROTHANS & DUMONT LLP

                                                    */s/ Scott J. Carpenter*
                                      By:  _____
                                            STEVEN J. ROTHANS
                                            SCOTT J. CARPENTER
                                            Attorneys for Defendants

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT